## Commonwealth v. Corliss

*Alan R. Shaddinger,* for the Commonwealth.
*M. Dan Mason,* for defendant.

VARDARO, *J.,* February 6, 1992—This matter is before the court due to an appeal by Chuck Corliss from a conviction before a district justice of a violation of a Greenwood Township Ordinance no. 1987-2 re-

garding the regulation of junk dealers and the establishment and maintenance of junkyards. The ordinance recites that it was enacted to "protect the public health, safety and welfare of the citizens of Greenwood Township" pursuant to the authority set forth in the Act of May 1, 1933, P.L. 103, as amended.

The statute was most recently amended on August 24, 1963, and now provides that a township has the power "to regulate and license junk dealers and the establishment and maintenance of junk yards and scrap yards including, but not limited to, automobile junk or graveyards and to prescribe license fees therefore not to exceed $200 per year." (53 P.S. §65758).

The Greenwood Township Ordinance was enacted on September 2, 1987, to become effective on September 7, 1987. The ordinance provided that from and after the effective date "no person shall engage in the business of a junk dealer or maintain a junkyard without first obtaining a license from the Board of Supervisors of Greenwood Township...." It further provides that "No person shall park, maintain, accumulate, dismantle, store or dispose of, in the open air on a property such that is visible and/or accessible to the public, either from the public highway or adjoining property, at any time of the year, three or more articles or materials which are included within the term 'junk' as that term is defined herein, whether or not any such article or material, or any parts therefrom is being kept for sale." The section of the ordinance defining "junk" in part states that "'Junk' shall mean any used and discarded materials or articles including, but not limited to, vehicles, machinery, equipment, appliances, structures, metal, rubber, rags, mattresses, paper, glass, cans, or barrels and the scrap or parts therefrom.... 'Junk' shall include any motor vehicles which are abandoned and/or in-

operable, and which are not registered as required by the Motor Vehicle Code of the Commonwealth of Pennsylvania."

The ordinance further defines "'Junk Yard' shall mean any place where any junk as hereinabove defined is stored or accumulated outside of a totally enclosed building or structure; or where the business of buying and selling junk is carried on; or where two or more motor vehicles are stored which are abandoned and/or inoperable and which are not registered as required by the Motor Vehicle Code of the Commonwealth of Pennsylvania."

The ordinance goes on to set forth a procedure whereby a person desiring to maintain a junkyard within the township can apply for a license for an annual license fee of $200 and if approved the junkyard has to conform to certain other requirements within the ordinance.

Chuck Corliss maintains an automobile repair service at a location other then the one in question but over the last several years has stored various automobiles and parts of automobiles on the property in question at the corner of Legislative Route 19 and Mattocks Road within the township. The items stored clearly fit within the definition of "junk" set forth in the ordinance.

Corliss was cited under the aforesaid section of the ordinance prohibiting three or more pieces of "junk" from being visible and/or accessible to the public. Essentially, Corliss was accused of maintaining on his property what would be a "junkyard" within the meaning of the ordinance.

The defendant maintains that the ordinance in general and specifically the section applied to him is invalid because junkyards are not nuisances per se and second

class townships cannot regulate a junkyard unless there is proof that it is nuisance. In support of that proposition, the defendant cites Act of May 20, 1957, P.L. 174, as amended 53 P.S. §65712, which deals with the powers of second class townships to institute actions in equity to abate nuisances including accumulations of garbage and rubbish and stored, abandoned or junked automobiles.

While prior to August 24, 1963, a second class township only could control such behavior if the township constituted it a nuisance in fact, the new section of the Second Class Township Code enacted at that time extended the power of second class townships to regulate junkyards where the maintenance of the activity did not constitute a nuisance in fact. *Mt. Pleasant Township v. Hartlaub,* 8 Adams L.J. 121 (1966).

There are, however, limitations to ordinances enacted under the new section including that such an ordinance must substantially relate to the health, safety and general welfare of the public and cannot be so broad as to allow enforcement for aesthetic reasons or due to the effect on neighboring real property values. *Township of Upper Milford v. Beck,* 32 Lehigh L.J. 420 (1967).

In this case a fair reading of the ordinance indicates it is intended to protect the health, safety and general welfare of the public and is not so broad as to allow enforcement for aesthetic purposes. The ordinance does require some fencing which would be appropriate to keep the public from entering an area that could be dangerous particularly for children and does require that the area between such fencing and any public thoroughfare "be implanted with shrubbery, bushes and evergreens at reasonable intervals between each such plant." However, we do not believe those requirements are unreasonable compared to the situation in *Township*

*of Upper Milford, supra* where the ordinance was struck down for, among other reasons, requiring that trees and shrubbery be planted along the entire length of the fence such that it will completely conceal the fence within a period of three years.

After a de novo hearing, we believe that the ordinance is valid and that the township has proven beyond a reasonable doubt that the defendant has violated the ordinance.